UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| IN RE: HEALTH MANAGEMENT LIMITED PARTNERSHIP, an Illinois Limited Partnership, d/b/a Doctors Hospital and d/b/a Heartland Plastic Surgery Center and d/b/a Central Illinois Eye Institute and d/b/a Corporate Health Solutions, | ) ) ) ) ) ) ) ) | |
| Debtor, | ) ) | |
| v. | ) ) | 05-3130 |
| UNIVERSAL GUARANTY LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| WILLIAM N. COUGHLIN and HEALTH MANAGEMENT LIMITED PARTNERSHIP, | ) ) ) ) | |
| Defendants-Appellants. | ) ) | |

## **OPINION**

RICHARD MILLS, U.S. District Judge

1

The Court now considers Defendant-Appellant Dr. William N. Coughlin's appeal.

## FACTS

This case arises from claims the parties have as to a defunct hospital's accounts receivable. Debtor Health Management Limited Partnership ("Health Management") operated a Springfield, IL area hospital known as "Doctors Hospital". Health Management began a credit arrangement with First of America Bank in October 1992. First of America later became National City Bank and, for purposes of this case, the two banks will be jointly referred to as "National City". Health Management gave National City a first mortgage on its hospital facility and a first priority lien on its other business assets, including accounts receivable.

Via a 1999 lending agreement, Marine Bank of Springfield ("Marine Bank") became Health Management's primary lender for accounts receivable. Pursuant to the agreement, Marine Bank took a second mortgage on the hospital and other Health Management assets,

including accounts receivable.  At Marine Bank's request, National City agreed to subordinate its hospital receivables to Marine Bank.

The hospital company executed a series of promissory notes with Marine Bank after starting its lending relationship with Health Management.  Each loan proposed to Health Management was preceded by a Loan Presentation.  The terms of the proposed loan were taken to Marine Bank's loan review board.  When Marine Bank issued the loan to Health Management, the promissory note which Health Management executed described the collateral which was secured by the loan.

In early 2003, Health Management reached the limit on its line of credit with Marine Bank account.  Health Management was also $150,000.00 overdrawn on its own Marine Bank.  The debtor and certain of its partners negotiated a new short term loan for $250,000.00 from Marine Bank which Marine identified as Loan No. 26378.  This short term note was secured by the personal guarantees of these certain partners.  The collateral section of the January 10, 2003, promissory note recited the following pledge of collateral:

COLLATERAL. Borrower acknowledges this Note is secured by a SECURITY AGREEMENT DATED APRIL 30, 1999. ASSIGNMENT OF ACCOUNTS RECEIVABLE DATED APRIL 30, 1999. ASSIGNMENT OF ACCOUNTS DATED APRIL 30, 2001. ASSIGNMENT OF MARINE BANK, SPRINGFIELD CHECKING ACCOUNTS DATED APRIL 30, 1999. BUSINESS LOAN AGREEMENT DATED APRIL 30, 1999. REAL ESTATE MORTGAGE DATED APRIL 30, 2000. ASSIGNMENT OF RENTS DATED APRIL 30, 2000. SECOND AMENDED AND RESTATED LOAN AGREEMENT WITH THE EFFECTIVE DATE OF APRIL 30, 2002. COMMERCIAL SECURITY AGREEMENTS DATED APRIL 30, 2000. COMMERCIAL GUARANTY'S DATED JANUARY 10, 2003 FOR T. KENT COCHRAN, F. DONALD DAVIS, AND CHRISTIAN C. RICE, JR. SEE ATTACHED EXHIBIT "A".

The "guarantors" of this $250,000.00 loan requested and received a commitment letter from Marine Bank under which Marine Bank promised that all of Health Management's receivables which Marine Bank collected would first be used to satisfy the $250,000.00 promissory note. In January 2003 the $250,000.00 note became past due. Marine Bank set off sufficient funds from Health Management accounts receivable account at Marine Bank to pay off the loan.

Health Management executed a second $250,000.00 note on March 7, 2003. Unlike the prior $250,000.00 note, the second

$250,000.00 loan had no "guarantors".  It was an emergency loan which Health Management used to cover the hospital's payroll.  The loan was drafted and executed in about one day's time.  Defendant-Appellant William Coughlin was a staff physician at Doctors Hospital who became a participant in this second $250,000.00 loan.  Dr. Coughlin did not negotiate any provision for repayment of the loan through the account receivables.  During the bankruptcy proceedings, he testified that he did not review or read the loans.

The March 2003 payroll loan involving Dr. Coughlin was the only loan from Marine Bank secured by cash.  Given Doctors Hospital's circumstances, Marine Bank would only loan the money if it was a 100% cash collateralized loan.  Thus, Dr. Coughlin had to pledge $250,000.00 cash to secure the loan.

Marine Bank prepared loan presentation documents for the approval of its loan review board.  Each loan contained the terms under which each loan was made to Health Management.  In 2002, when Marine Bank considered the renewal of Health management's

outstanding two loans, a "Loan Presentation" was prepared. The security for the renewed loans was described as:

> Security:
>
> Collateral: Commercial Security Agreement dated 4-30-99
> Assignment of accounts receivable dated 4-30-99
> Assignment of Accounts dated 4-30-99
> Assignment of MBS checking account dated 4-30-99
> Business loan agreement dated 4-30-99
> R/E mortgage and ALR on 5230 S. 6th St $5,299,012.00
> Net accounts Receivable dated 5-06
> The "Gross Collateral Value was listed in the Loan Presentation at $5,294,012.00

When the March 7, 2003, loan was arranged, a Loan Presentation was prepared for the review of the Marine Bank loan committee. The March 7, 2003, Loan Presentation described the security as:

> Security:
>
> Collateral: Hold on DDA account #786489 in the amount of $250,000.00
> Value: $250,000.00
> Basis: Current account balance.

A line item for "Gross Collateral Value", which would be the security mentioned plus the value of other collateral, had nothing filled in.

The two $250,000.00 promissory notes executed by Health

Management in January 2003 and March 2003 described the assets securing the respective notes. The January 2003 promissory note described the collateral for that $250,000.00 note as:

> COLLATERAL. Borrower acknowledges this Note is secured by a SECURITY AGREEMENT DATED APRIL 30, 1999. ASSIGNMENT OF ACCOUNTS RECEIVABLE DATED APRIL 30, 1999. ASSIGNMENT OF ACCOUNTS DATED APRIL 30, 2001. ASSIGNMENT OF MARINE BANK, SPRINGFIELD CHECKING ACCOUNTS DATED APRIL 30, 1999. BUSINESS LOAN AGREEMENT DATED APRIL 30, 1999. REAL ESTATE MORTGAGE DATED APRIL 30, 2000. ASSIGNMENT OF RENTS DATED APRIL 30, 2000.
> SECOND AMENDED AND RESTATED LOAN AGREEMENT WITH THE EFFECTIVE DATE OF APRIL 30, 2002. COMMERCIAL SECURITY AGREEMENTS DATED APRIL 30, 2000. COMMERCIAL GUARANTY'S DATED JANUARY 10, 2003 FOR T. KENT COCHRAN, F. DONALD DAVIS, AND CHRISTIAN C. RICE, JR. SEE ATTACHED EXHIBIT "A".

The March 2003 $250,000.00 note described the collateral as:

> COLLATERAL. Borrower acknowledges this Note is secured by AN ASSIGNMENT OF ACCOUNT DATED MARCH 7, 2003. A HYPOTHECATION AGREEMENT DATED MARCH 7, 2003.

By April 2003, Marine Bank noticed that the debtor began moving funds to a bank in Jacksonville, Illinois. Because the debtor was required to maintain its primary bank accounts at Marine Bank, Marine Bank

surmised that the debtor would be imminently filing for bankruptcy. Thus, on April 2, 2003, Marine Bank called the March 2003 $250,000.00 loan. It liquidated Dr. Coughlin's account and paid off the loan. Unbeknownst to Marine Bank, the Health management also filed its Chapter 11 petition that day.

Three relevant events took place soon after Health Management filed for bankruptcy. On April 4, 2003, the bankruptcy court entered a cash collateral order in favor of Marine Bank. Next, National City sold its loan and security position to Plaintiff-Appellee Universal Guaranty Life Insurance Company ("Universal"). Finally, the hospital closed within a month of the bankruptcy filing and Marine Bank continued to collect the accounts receivable of the hospital until it was paid in full. Universal began collecting the remaining accounts receivable at that time.

Universal filed an adversary action in the bankruptcy court when it discovered that Dr. Coughlin believed he was entitled to $250,000.00 of those accounts receivable. Dr. Coughlin contended that the March 2003 $250,000.00 was not only secured by his $250,000.00 cash account, but

8

also by the accounts receivable which Universal was collecting.

Dr. Coughlin filed an answer to Universal's bankruptcy adversary complaint claiming that Universal was not in first security position on the accounts receivable. He raised no affirmative defenses in his answer.

The parties briefed and argued the matter to the bankruptcy court. The court ruled in favor of Universal and Dr. Coughlin timely appealed.

## JURISDICTION

The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158 and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

## STANDARD OF REVIEW

Bankruptcy court decisions involving the exercise of discretion are reviewed for abuse of discretion. In re American Reserve Corp., 841 F.2d 159, 162 (7th Cir.1987)). The Court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law *de novo*. In re Midway Airlines, Inc., 383 F.3d 663, 668 (7th Cir.2004); see also Fed. R. Bankr.P. 8013.

## ANALYSIS

Dr. Coughlin argues that the cash collateral order entered in favor of Marine Bank should have prevented the bankruptcy court from determining that Marine Bank's March 3 loan to Health Management was not secured by collateral Health Management pledged to Marine Bank in earlier loans. Contrary to Federal Rule of Civil Procedure 8(c), Dr. Coughlin did not plead this affirmative defense. See <u>Jackson v. Rockford Housing Authority</u>, 213 F.3d 389 (7th Cir. 2000) (defendant must plead affirmative or the defense is waived). Nevertheless, Dr. Coughlin presented this defense at trial. Although Health Management failed to object, it now contends that Dr. Coughlin waived his affirmative defense. Health Management's failure to object at trial bars it from asserting a waiver argument now.

Health Management fares better on the merits of the case. First, contrary to Dr. Coughlin's assertions, the bankruptcy court's cash collateral order was not specific enough to bar Health Management's adversary case. The cash collateral order merely stated that the $3.6

million debt—which Health Management stipulated to as of the date of the bankruptcy filing—was the total debt to Marine Bank and that certain pre-petition liens exist. While the order contains a provision about filing adversary proceedings against Marine Bank by July 1, 2003 "for the purpose of challenging the validity, priority, perfection, enforceability and determination of the lender's pre-petition liens, mortgages and security interests", this language means no more than it says. Therefore, Dr. Coughlin is wrong to assert that the cash collateral order had to apply to the paid-off March 2003 $250,000.00 loan. As in In re Mariner Post-Acute Network, 267 B.R. 46 (D. Del. 2001), the bankruptcy court included this type of language in order to protect pre-petition lenders. There, as here, the language does not require dismissal of an adversary action. Id. at p.53.

Dr. Coughlin is also incorrect when he claims that a composite review of the relevant documents shows that the March 2003 loan was secured by accounts receivable. Other than the March 2003 loan, every loan presentation document states that the hospital's accounts receivable

would stand as security. This alone suggests that the March 2003 loan was not secured by accounts receivable. Furthermore, the "Loan Presentation" stated that the loan is a six-month $250,000.00 loan which will have as its security "Hold DDA acct #786489 in the amount of $250,000.00." Moreover, the promissory note described the collateral as being secured by "an assignment of account dated March 7, 2003. A hypothecation agreement dated March 7, 2003." The January 2003 promissory note states that the blanket security agreement—which includes accounts receivable—is security for the loan. Thus, a comparison of the March and January notes shows that the March loan did not include accounts receivable.

    Dr. Coughlin tries to escape this conclusion by drawing on the testimony of Marine Bank's attorney, Howard Neuger, to show that the parties intended the accounts receivable to be included in the March loan. While Mr. Neuger's testimony indicates that Marine Bank intended to include the accounts receivable, the documentary evidence supports a different conclusion. The documentary evidence is highly

probative and it shows that amount of the March 2003 loan is equal to the amount Dr. Coughlin pledged. This indicates that Dr. Coughlin's $250,000.00 was the only collateral. Since Dr. Coughlin pledged the entire amount of the loan, Marine Bank did not need additional collateral. If Marine Bank believed more collateral was necessary, it would have added a reference in the promissory note to the accounts receivable, equipment, mortgage or any other collateral mentioned in its earlier security documents. See In re Schmaling, 783 F.2d 680 (7th Cir. 1986)(discussing ease and benefit of adding additional terms for purposes of identifying collateral).

ERGO, the Court AFFIRMS the bankruptcy court's judgment. Dr. Coughlin's appeal (d/e 1) is DENIED.

IT IS SO ORDERED.

ENTER: March 7, 2006

FOR THE COURT:            s/ Richard Mills
                          United States District Court